# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**ATTACHMENT 1**

PLAINTIFF

Michael L. Trammell

v.

Peter J. Pescatore
Chuck Dominico
DEFENDANTS

FILED
IN CLERKS OFFICE
2003 DEC 29  P 12: 30
U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL ACTION

NO. 04-10034 EFH

SCANNED
DATE: 1-7-04
BY: FTM

## COMPLAINT

### Parties

1. The Plaintiff Michael L. Trammell is a resident of Brockton, Plymouth, Massachusetts and a citizen of the United States.

2. The defendant Peter J. Pescatore workPlace is in Weymouth, Norfolk, Massachusetts and a citizen of the United States.

3. The defendant Chuck Dominico workPlace is in Weymouth, Norfolk, Massachusetts and a citizen of the United States.

### Jurisdiction

4. This court has Jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## Facts

5. On 7-8-02 when I was hired I explained to Peter Pescatore that I am a Jehovah's Witness,

6. and that I have meetings on the weekdays and on the weekends and also I have field service

7. on the weekends and he agreed to accommodate me with a work time schedule of 1am to 2PM,

8. too comply with my spiritual schedule, this work time schedule of 1am to 2pm is the best because

9. it has set appointment's bigger tips, and early morning call-in appointment's bigger tips, and

10. Morning to mid-afternoon airport terminal's pickup's bigger tips; This is in contrast to the work

11. time schedule of 4PM to 2am, which is the worst because it left me with no time too attend

12. weekday meeting's and no time for field service on the weekends and there's set appointment's

13. once in while, with small tip's, and afternoon late too late night morning call-in appointment's

14. with small tip's, and late afternoon too late night morning airport terminal's pickup's with small tip's.

## Facts

15. I started work and training on 7-9-02 to 7-13-02; then from 7-15-26-02 I worked the 1am to 2PM

16. Schedule; then I came into shuttle King to get my check on friday 7-27-03, this is when I was told

17. by Peter J. Pescatore and Chuck Dominico that I would no longer be working time schedule of 1am

18. to 2pm, and that I'd be switched to the work time schedule of 4pm to 2pm-+; with no explaination and

19. the way that it was said to me, was that if I didn't like it I could leave; right then I knew peter J.

20. pescatore promise agreement to accom-modate my spiritual schedule was a lie,

21. and it took away my right of worship as a Jehov-ah's Witness.

22. On august 20, 2002 about 8 to 9pm that even-ing as I was making my rounds through the air-

23. -Port terminal's when I heard over the nextel walkey talkey the dispatcher chuck Dominico,

24. call me to tell me that I had a pickup appoint-ment at terminal-C at 10pm or 11pm and his

## Facts

25. name is Vivian Dunn. From 4pm to 8pm and up until the call to pickup Vivian Dunn; the dispat-

26. -cher, Chuck Dominico has been making mista--ke's on all of my call-in, appointment terminal pick

27. -up's and terminal pickup's. So I was waiting at the pickup area outside terminal-c from 8 or

28. 9pm for Mr. Vivian Dunn, who is in a wheelchair. So 1 hour, 2-hours pass, no Mr. Dunn; all the

29. While I am in touch with the dispatcher, who tell's me to keep waiting; Mr. Dunn is on his way.

30. So another 1 to 2-hours go's bye; now the disp--atcher is nervous asking me is Mr. Dunn there

31. yet, and I asked the dispatcher is he sure Mr. Dunn, is in a wheelchair and what kind it is; he

32. said Mr. Dunn is in a manual wheelchair, then he said to me too go around on the outside

33. pickup area of terminal-c and seek out any man in a manual wheelchair and too identify

34. myself; so I did that. Then the dispatcher told me to go inside terminal-c; so I did that.

# Facts

35. It's about 12 to 12:30am and still no sign of Mr. Dunn; I tell the dispatcher. Then he

36. said to me go around too the other terminal's - B, C, D and E inside and outside too find

37. Mr. Dunn, and that's what I did; this went on until 2am; then I said to the dispatcher, Mr.

38. Dunn is no where too be found; then the dis--patcher said to end the search and go too

39. terminal-E to pick up a group of people who are going to M.I.T. in cambridge, MA; so I

40. went too terminal-E where the group of people going to M.I.T. in cambridge, MA; were

41. While I was boarding the group of people into the shuttle van and putting half of their luggage in

42. the back trunk of the van, I turn toward the main terminal building which was three pickup

43. Island's area's away coming out of terminal build--ing door was a black man on motorized scooter

44. followed by eight people with him. So I ran over too them and ask the black man is his name

## Facts

45. Vivian Dunn, he answered yes and then I identity myself and then I asked all nine of them

46. too follow me over too my shuttle van; and I also asked Mr. Dunn, who were these eight

47. people and he said they were his family members and the eight people said the same thing.

48. so I immediately got chuck, the dispatcher on the walkey talkey and told him that I had found

49. Mr. Dunn; then chuck said take the M.I.T. peoples group out of my shuttle van and tell them

50. that other shuttle van will pickup them and for me to take Mr. Dunn aboard and to take

51. him too his destination, and I told chuck, that Mr. Dunn is claiming that these eight people are

52. his family member's; so chuck said there was only one reservation made by Mr. Dunn

53. and do not take anyone self aboard the shuttle; so I told Mr. Dunn, what chuck had

54. said that he was the only one to get a shuttle ride, and Mr. Dunn said he is not getting into

## Facts

55. the shuttle van without his family members; then I told Mr. Dunn that he needed to talk to

56. the dispatcher, chuck to tell him what arrangements pertaining to himself and the eight people

57. with him, he agreed; so I had Mr. Dunn get into shuttle and I got chuck and Mr. Dunn on the

58. nextel walkey talkey together to work it out, then Mr. Dunn signaled me and told me that him

59. and chuck came to an agreement; so I talk to chuck and he said to me that everything is fine

60. because it's already being charged to his credit card, so go on and take them home.

61. But I find out that two of the eight people with Mr. Dunn wanted to go the cape cod, so

62. Chuck said leave the two people at terminal E pickup area and he will have another shuttle

63. van to take them to their destination. Then I helped Mr. Dunn in the shuttle van and let

64. in the six people and put in Mr. Dunn's scooter and their luggage in the trunk

# Facts

65. of the van, and then I drove them to Mr. Dunn's address of 2262 Dorchester ave., Dorchester,

66. MA, Lower mill's apartment is where I off loaded Mr. Dunn, his scooter and his

67. luggage and then I went to off load the six people's luggage, they said to me that

68. they did not live there; and that they lived around the corner from Mr. Dunn, so I figure-

69. -d since Chuck already charged Mr. Dunn's credit card extr- -a for these six people, so I drove them to their address

70. around the corner and off loaded them and their luggage, and then I drove back to Shuttle King in south Weymouth,

71. MA. Mr. Vivian Dunn and these six people lied and scam- -med me. The next day when I went in to work at shuttle 8-21-2002

72. King in south Weymouth, MA; I went into the compu- -ter room where Mark the dispatcher and reserv-

73. -ation people, were there; to get my paper work for work, Mark said to me that

74. Peter J. Pescatore, President/Owner want- -s to see you in his office; so I went to his office

# Facts

75. and Peter asked me what happen with Mr. Vivian Dunn and these six people, because he talked to chuck

76. about this and he said that you gave a non-paying six people a free ride and that you did this on your own

77. without chuck's authorization; is this true peter asked me. so I said no it is not true, I had chuck's

78. authorization because I had chuck talk to Mr. Dunn over the Nextel walkey talkey together and they came

79. to an agreement about charging more money to his credit card for the six people with Mr. Dunn, then I spoke

80. to Chuck and he said he charged extra money to Mr. Dunn's credit card and chuck gave me his authorization to take

81. the six people to their residence. And chuck came into the office of shuttle King and him and peter were talking

82. outside peter's office and then they came into peter's office where I was and me and chuck were arguing back

83. and forth, until peter broke it up, and then chuck said that he knew that the eight people who were with Mr. Dunn were

84. not his family member's but only good samaritan's helping him and chuck knew this from the beginning because he talked to them

# Facts

85. So that meeting ended with peter putting me on suspensi--on until tomorrow 8-22-2002, when he can get in touch with Mr.

86. Vivian Dunn to complete his investigation and for me to be in his office on 8-22-2002 for his decision. 8-22-2002 came and even

87. though Mr. Dunn backed up my story, peter fired me anyway. One night when I was working, driving the shuttle van I turn the

88. frequency button the wrong way and the nextel walkey talkey stopped working, and I was not in touch with chuck, the dispatcher for over

89. three hour's; chuck reported my shuttle van stolen to the state police and shut me down for the rest of the night. On 8-20-02 if I was not follo-

90. -wing chuck's orders why didn't he call the state police on me. Chuck had not charged the extra money to Mr. Dunn credit card because,

91. chuck and peter used the Dunn situation to set me up to fire me.

Wherefore, the Plaintiff demands Judgment against the defendant's for Ten Million dollar's damages and other relief as this Court deems just.

92. The plaintiff demands a trail by jury.

Signature: *Michael L. Trammell* PRO SE

Name: Michael L. Trammell

Address: 111 Green Street, Apt. #7

Brockton, Massachusetts 02301

Telephone: (508) 584-2261